Kaitlyn D. Shannon (#296735)
Susan E. Smith (#329539)
**Beveridge & Diamond, P.C.**
1900 N Street NW, Suite 100
Washington, DC 20036
Phone:  (202) 789-6088 (Shannon)
         (415) 262-4023 (Smith)
Fax:    (202) 789-6190
Email:   KShannon@bdlaw.com
         Ssmith@bdlaw.com
*Attorney for Defendant Swinerton Builders*

# IN THE UNITED STATES DISTRTICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ET AL.* | Case No.  3:24-cv-00274-emc |
| Plaintiffs, | **DEFENDANT'S MEMORANDUM RESPONDING TO THE COURT'S JUNE 25, 2024, ORDER** |
| v. | |
| SWINERTON BUILDERS | |
| Defendant. | |

DEF.'S MEM. RESP. JUNE 25, 2024, ORDER – Case No. 3:24-cv-00274

**DEFENDANT'S MEMORANDUM RESPONDING TO**

**THE COURT'S JUNE 25, 2024, ORDER**

Defendant Swinerton Builders (Swinerton) submits this memorandum in response to the questions posed in the Court's June 25, 2024, order (the Order), ECF No. 20, and in support of entry of the proposed consent decree (the Proposed Decree) lodged in this matter on January 17, 2024, ECF No. 4-1.  In total, the Proposed Decree requires Swinerton to bear more than $4 million in penalties and mitigation relief to resolve Plaintiffs' allegations that Swinerton violated the Clean Water Act (CWA or the Act), 33 U.S.C. § 1251 *et seq.*, and analogous state laws during the construction of four utility-scale solar power facilities.  *See* Proposed Decree ¶¶ 8, 14, 15.  The Proposed Decree is, as Plaintiffs observed in their Motion to Enter Consent Decree, the product of "good faith, arm's-length negotiations for a period of over two years before reaching the proposed settlement" among parties represented by experienced counsel.  U.S. Mot. to Enter Proposed Consent Decree (Motion to Enter) 7, ECF No. 15.

Swinerton understands that Plaintiffs are filing a brief in response to the Court's questions.  Swinerton does not have reason to believe that it will disagree with the content of Plaintiffs' filing but reserves the right to seek the Court's leave to respond if Swinerton determines that it disagrees with the substance of Plaintiffs' brief.

Swinerton files its own memorandum to further assist the Court based on the limited information that Swinerton, as the Defendant in this matter, can provide at this time.  This information shows how the magnitude of relief prescribed by the Proposed Decree falls within the range of other civil judicial settlements resolving allegations that construction activities conducted at multiple sites violated the CWA and analogous state laws.  In fact, the Proposed Decree requires Swinerton to pay one of the highest civil penalties ever levied in a CWA construction stormwater case and requires Swinerton to spend more than $1.7 million to mitigate environmental impacts in Idaho and Alabama arising from Plaintiffs' allegations.  Finally, it is appropriate that the Proposed Decree does not require Swinerton to implement a compliance program—unlike that found in some other consent decrees—because Swinerton is no longer in the business of building solar energy facilities.

DEF.'S MEM. RESP. JUNE 25, 2024, ORDER – Case No. 3:24-cv-00274

Swinerton answers the Court's four questions as follows:

**1.    What is the estimated monetary value of Swinerton's alleged violations of the Clean Water Act, 33 U.S.C. § 1319(b), and analogous state provisions, across all of the impacted construction sites? How is it calculated?**

Swinerton is unable to reduce the value of the Plaintiffs' allegations to a fixed monetary figure, but the CWA's penalty provisions and consent decrees entered to resolve other major multi-site construction stormwater cases brought under the Act provide guideposts for evaluating the Proposed Decree's relief.  The Act provides that any persons found to be in violation "shall be subject to a civil penalty" up to $66,712 per violation, per day.  33 U.S.C. § 1319(d); 40 C.F.R. § 19.4, Table 1 (adjusting the Act's civil penalty figure to account for inflation).  Alabama and Illinois, respectively, set maximum civil penalties of $25,000 and $10,000 per violation, per day. Ala. Code § 22-22A-5(18)c; 415 Ill. Comp. Stat. 5/42(b)(1).  The CWA directs district courts to consider six factors to be considered when imposing a civil penalty: "the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require."  33 U.S.C. § 1319(d). Alabama and Illinois law likewise prescribe a set of similar factors to guide penalty determinations in enforcement cases.  *See* Ala. Code § 22-22A-5(18)c.; 415 Ill. Comp. Stat. 5/42(h).  The Complaint in this case does not allege, among other things, a specific number of violations of federal and state law or the full range of facts necessary to impose a civil penalty.

Courts, however, possess substantial discretion to impose penalties falling far below the statutory maximum.  As this Court recently observed, judges may "employ a variety of methods for exercising their discretion in calculating a civil penalty under the CWA . . . . so long as it considers the six statutory factors listed above and does not exceed the maximum statutory penalty amount per violation." *Californians for Alternatives to Toxics v. Kernen Constr. Co.*, No. 4:20-cv-01348, 2021 WL 1734897 at *3 n.2 (N.D. Cal. May 2, 2021); *Californians for Alternatives to Toxics v. Schneider Dock & Intermodal Facility, Inc.*, 374 F. Supp. 3d 897, 922 (N.D. Cal. 2019) ("While an award of civil penalties is mandatory, '[d]istrict courts retain the broad discretion to set a penalty

DEF.'S MEM. RESP. JUNE 25, 2024, ORDER – Case No. 3:24-cv-00274

commensurate with the defendant's culpability.'" (quoting *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1397 (9th Cir. 1995))).  Exercising this discretion, courts routinely impose civil penalties that are orders of magnitude below the statutory maximum, such as the $2,087,750 penalty awarded by the Court in *Kernen Construction* for 9,461 distinct violations of the Act—a rate of approximately $220/violation.  2021 WL 1734897 at \*5; *see also Inland Empire Waterkeeper v. Corona Clay Co.*, No. 8:18-cv-00333, 2024 WL 94112, at \*4 (C.D. Cal. Jan. 2, 2024) (imposing a $1,881,150 civil—$150/violation—penalty for 12,541 industrial stormwater permit violations).

Moreover, civil judicial settlements resolving allegations that large-scale construction activities violated the CWA have typically imposed penalties in the range of $400,000 to $2 million, accounting for inflation.[1]  The table below lists the penalties imposed in consent decrees resolving enforcement actions brought against homebuilders whose construction activities allegedly violated the CWA between 2008 and 2024:

| Case | Dates of Lodging and Entry of Consent Decree | No. of Building Sites | Total Civil Penalty[2] |
|---|---|---|---|
| *United States v. Centex Homes*, No. 1:08-cv-00605 (E.D. Va.) | Lodged: 6/11/2008 (ECF No. 2) Entered: 7/30/2008 (ECF No. 9) | 681 sites (ECF No. 1, App'x A) | $2,093,089 (ECF No. 9, ¶ 23) |
| *United States v. KB Home*, No. 1:08-cv-00603 (E.D. Va.) | Lodged: 6/11/2008 (ECF No. 2) Entered: 7/18/2008 (ECF No. 9) | 532 sites (ECF No. 1-1) | $1,670,243 (ECF No. 9, ¶ 23) |
| *United States v. M.D.C. Holdings, Inc.*, No. 1:08-cv-00604 (E.D. Va.) | Lodged: 6/11/2008 (ECF No. 2) Entered: 7/18/2008 (ECF No. 8) | 382 sites (ECF No. 1-1) | $1,120,543 (ECF No. 8, ¶ 23) |
| *United States v. Pulte Homes, Inc.*, No. 1:08-cv-00602 (E.D. Va.) | Lodged: 6/11/2008 (ECF No. 5) Entered: 8/6/2008 (ECF No. 24) | 608 sites (ECF No. 1, App'x A) | $1,236,121 (ECF No. 24, ¶ 23) |

[1] To aid in the Court's consideration of these past settlement figures, Swinerton has inflated them using the Bureau of Labor Statistics' Consumer Price Index Inflation Calculator, available at https://data.bls.gov/cgi-bin/cpicalc.pl.  Swinerton inflated them from the month in which they were lodged to January 2024.

[2] These penalty figures have been inflated in the manner described in footnote 1.

DEF.'S MEM. RESP. JUNE 25, 2024, ORDER – Case No. 3:24-cv-00274

| Case | Dates of Lodging and Entry of Consent Decree | No. of Building Sites | Total Civil Penalty[2] |
|---|---|---|---|
| *United States v. Hovnanian Enters., Inc.*, No. 2:10-cv-01742 (E.D. Pa.) | Lodged: 4/20/2010 (ECF No. 2) Entered: 8/6/2010 (ECF No. 7) | 591 sites (ECF No. 1-2) | $1,414,698 (ECF No. 7, ¶ 24) |
| *United States v. Beazer Homes USA, Inc.*, No. 3:10-cv-01133 (M.D. Tenn.) | Lodged: 12/2/2010 (ECF No. 4) Entered: 2/10/2011 (ECF No. 24) | 362 sites (ECF No. 1-1) | $1,301,611 (ECF No. 24, ¶ 23) |
| *United States v. Ryland Group, Inc.*, No. 3:11-cv-00499 (W.D.N.C.) | Lodged: 10/7/2011 (ECF No. 2) Entered: 7/23/2012 (ECF No. 6) | 278 sites (ECF No. 1-1) | $851,337 (ECF No. 6, ¶ 23) |
| *United States v. Toll Bros., Inc.*, 2:12-cv-03489 (E.D. Pa.) | Lodged: 6/20/2012 (ECF No. 2) Entered: 6/17/2013 (ECF No. 22) | 16 sites (ECF No. 1, Exhibit A) | $995,899 (ECF No. 16-2, ¶ 23) |
| *United States v. NVR, Inc.*, 1:17-cv-04346 (D.N.J.) | Lodged: 6/15/2017 (ECF No. 2) Entered: 9/7/2017 (ECF No. 5) | 65 sites (ECF No.1, ¶¶ 82, 86) | $535,107 (ECF No. 2-1, ¶ 18) |
| *United States v. D.R. Horton, Inc.*, No. 2:24-cv-00428 (N.D. Ala.) | Lodged: 4/8/2024 (ECF No. 3) Entered: TBD | 16 sites (ECF No. 1, ¶¶ 128, 132) | $400,000[3] (ECF No. 3-1, ¶ 8) |

The only CWA construction stormwater settlement that has imposed a larger civil penalty than those above totaled $3.1 million—over $5.1 million in today's dollars[4]—levied in an enforcement action brought by the United States, the State of Tennessee, and the State of Utah. Consent Decree ¶ 23, *United States v. Wal-Mart Stores Inc.*, No. 1:04-cv-00301 (D. Del. May 12, 2004), ECF No. 2.  This settlement stands as an outlier for two reasons.  *First*, the civil penalty is more than $3 million larger in today's dollars than any of the settlements listed above.  *Second*, the defendant in that matter had, three years prior, already entered a consent decree to resolve a series of CWA construction stormwater violations but continued after entry of *that* decree to engage in a

---

[3] This penalty figure has not been adjusted.

[4] Swinerton adjusted this figure using the approach described in footnote 2.

DEF.'S MEM. RESP. JUNE 25, 2024, ORDER – Case No. 3:24-cv-00274

"pattern" of "failures to comply with the requirements of applicable permits for the discharge of storm water" from construction sites.  Complaint ¶¶ 22-25 , *United States v. Wal-Mart Stores Inc.*, No. 1:04-cv-00301 (D. Del. May 12, 2004), ECF No. 1.

Consistent with the defendants in these cases continuing to engage in the type of construction that gave rise to their violations, prior consent decrees also demanded the implementation of construction stormwater compliance programs as injunctive relief.  *See, e.g.*, Consent Decree ¶¶ 8-23, *United States v. Hovnanian Enters. Inc.*, No. 2:10-cv-01742 (E.D. Pa. Aug. 6, 2010), ECF No. 7. Those programs were "tailored to bring [the homebuilders' operations] into compliance with the stormwater requirements of the Act and with the requirements of state-issued stormwater permits." *E.g.*, Mem. in Supp. of Pl.'s Uncontested Mot. to Enter Consent Decree 3, *United States v. Hovnanian Enters. Inc.*, No. 2:10-cv-01742 (E.D. Pa. Aug. 2, 2010), ECF No. 5-1; Pl.'s Mem. in Supp. of Unopposed Mot. to Enter Consent Decree 10-11, *United States v. The Ryland Group, Inc.*, No. 3:11-cv-00499 (W.D.N.C. July 2, 2012), ECF No. 5-1 (injunctive relief requires "measures to improve management of stormwater at all of [defendant's] home construction sites nationwide").

These consent decrees, however, did not provide for mitigation relief like that specified in the Proposed Decree.  Such relief is intended "to remedy, reduce or offset past (and in some cases ongoing) harm caused by alleged violations in a particular case."  EPA, *Securing Mitigation as Injunctive Relief in Certain Civil Enforcement Settlements* 2 (2d ed. Nov. 14, 2012).[5]  Here, the complaint alleges that certain "unauthorized discharges of sediment caused harm to the receiving waters" in Alabama and Idaho for which Plaintiffs seek mitigation relief.  Complaint ¶¶ 122, 133. Although Swinerton disputes this allegation and cannot assign a monetary value to the claims as alleged in the Complaint, the Proposed Decree provides for two forms of mitigation relief as discussed below in response to Question 3.

---

[5] https://www.epa.gov/sites/default/files/2013-10/documents/2ndeditionsecuringmitigationmemo.pdf

DEF.'S MEM. RESP. JUNE 25, 2024, ORDER – Case No. 3:24-cv-00274

**2.** **What is the monetary value of the 14,020 stream credits for the Alabama Mitigation Action?**

The 14,020 stream mitigation credits that Paragraph 15.a requires Swinerton to purchase cost $1,184,690 (the Purchase Price). Foellmer Decl. ¶¶ 6, 8 and Exh. A. Shortly after it signed the Proposed Decree, Swinerton received a quotation from the Broadview Mitigation Bank, which is located within Hydrologic Unit Code 03150110, offering to sell Swinerton 14,020 stream mitigation credits at the Purchase Price. *Id.* ¶ 6. Swinerton accepted this offer and wired the amount of the Purchase Price to the Broadview Mitigation Bank on December 27, 2023. *Id.* ¶ 8. Swinerton received a certificate of sale confirming its purchase of the 14,020 stream credits on January 2, 2024. *Id.* ¶ 9.

**3.** **Do the total civil penalty of $2.3 million, the injunctive relief of $600,000 for the Idaho Mitigation Action and 14,020 stream credits for the Alabama Mitigation Action make up a substantial amount of the total value in (1)?**

Although Swinerton cannot estimate the extent to which the Proposed Decree's relief makes up for or offsets a particular value for Plaintiffs' allegations, the size of the settlement indicates that it is within the mainstream of consent decrees resolving enforcement actions alleging that construction activities failed to comply with the CWA and analogous state laws. The civil penalty of $2.3 million is higher than that imposed by any of the homebuilders' settlements, each of which involved large numbers of construction sites in multiple states. Moreover, Swinerton does *not* have a compliance history like that in the *Wal-Mart* case; plaintiffs do not allege that Swinerton has ever been subject to a civil judicial settlement resolving a CWA enforcement action.

The Proposed Decree also provides for more than $1.7 million in mitigation relief not found in these other settlements. Swinerton has committed $600,000 "to be spent on actions with the purposes of reducing or controlling sedimentation" in the watershed that EPA alleges to have been impacted by sediment from the American Falls site. Proposed Decree, App'x A ¶ 1. This funding would go toward either one of two projects in Pocatello, Idaho, that would reduce sediment loading and improve water quality in the Portneuf River. *See id.*, App'x A at Attachments 1-2. Swinerton

DEF.'S MEM. RESP. JUNE 25, 2024, ORDER – Case No. 3:24-cv-00274

has also committed—and spent—over $1.1 million to purchase 14,020 stream mitigation credits from a mitigation bank located in the watershed surrounding the AL Solar site. *See supra* at 7-8; Proposed Decree ¶ 15.a. The purchase of such credits is routinely used for offsetting impacts to aquatic resources for activities permitted under Section 404 of the CWA, 33 U.S.C. § 1344. *See* 40 C.F.R. § 230.93(b)(2) (Section 404 permittees may meet their mitigation obligations "by securing those credits from the sponsor" of a mitigation bank); *see also* EPA, *Mitigation Banks under CWA Section 404*, https://www.epa.gov/cwa-404/mitigation-banks-under-cwa-section-404 (last updated June 28, 2024). Under the Proposed Decree, Swinerton's purchase of these credits will likewise "offset[] the harm caused by the sediment discharges at the AL Solar Site" alleged by Plaintiffs. Motion to Enter 5.

Finally, the Proposed Decree appropriately does not impose additional injunctive relief, such as a compliance program, beyond its mitigation requirements. As alleged in the Complaint, Swinerton sold the division—Swinerton Renewable Energy—that built the four utility-scale solar facilities that gave rise to the allegations in the Complaint, as well as assets relating to the construction of renewable energy facilities. Complaint ¶ 13; Foellmer Decl. ¶ 5. Because of this sale, which concluded in December 2021, Swinerton stopped building facilities like those that are the subject of Plaintiffs' allegations. *See* Complaint ¶ 13; Foellmer Decl. ¶ 5. The Complaint does not allege any other Swinerton division has failed to comply with the CWA or analogous state laws. With Swinerton out of the business of building solar facilities, there is no reason—as the United States has correctly observed—for "additional injunctive relief to be implemented in the future, other than the mitigation actions" required by the Proposed Decree. Motion to Enter 5.

**4.      What other alternatives to the consent decree are available or did the parties consider?**

The parties' only alternative was to litigate the case to judgment. Although the CWA provides for administrative actions for the imposition of penalties, the amount imposed by the Proposed Decree far outstrips the statutory maximum for administratively imposed penalties. *See* 33 U.S.C. § 1319(g)(2)(B) (imposing a statutory maximum of $125,000); 40 C.F.R. § 19.4, Table 1 (adjusting the maximum to $333,552 to account for inflation). Consequently, Swinerton's only

DEF.'S MEM. RESP. JUNE 25, 2024, ORDER – Case No. 3:24-cv-00274

alternative was to undertake the costs and risks of litigating against the United States and two states. Swinerton determined that the negotiated resolution memorialized in the Proposed Decree was preferable to incurring these costs and risks.

## CONCLUSION

Swinerton did not oppose Plaintiffs' motion to enter the Proposed Decree and continues to support its entry to resolve this matter.  Under the Proposed Decree, Swinerton will pay one of the largest civil penalties imposed in a CWA construction stormwater matter and make a substantial investment in mitigation relief to offset Plaintiffs' allegations of environmental harm.

Respectfully submitted,


/s/ Susan E. Smith
Kaitlyn D. Shannon (#296735)
Susan E. Smith (#329539)
**Beveridge & Diamond, P.C.**
1900 N Street NW, Suite 100
Washington, DC 20036
Phone:          (202) 789-6088 (Shannon)
                    (415) 262-4023 (Smith)
Fax:             (202) 789-6190
Email: KShannon@bdlaw.com
          Ssmith@bdlaw.com
*Attorneys for Defendants Swinerton Builders*

DEF.'S MEM. RESP. JUNE 25, 2024, ORDER – Case No. 3:24-cv-00274
-10-

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of July, 2024, I caused the foregoing Defendant's Memorandum Responding to the Court's June 25, 2024 Order to be electronically filed with the Clerk of the Court using this Court's CM/ECF system, which will send notice of such filing to counsel of record for all parties.

/s/Susan E. Smith
Kaitlyn D. Shannon (#296735)
Susan E. Smith (#329539)
**Beveridge & Diamond, P.C.**
1900 N Street NW, Suite 100
Washington, DC 20036
Phone:          (202) 789-6088 (Shannon)
                    (415) 262-4023 (Smith)
Fax:              (202) 789-6190
Email: KShannon@bdlaw.com
          SSmith@bdlaw.com
*Attorneys for Defendants Swinerton Builders*