1
2
3
4                       UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    UNITED STATES OF AMERICA, et al.,        Case No.  24-cv-00274-EMC

8                          Plaintiffs,

9            v.                              **ORDER GRANTING MOTION TO
                                             ENTER INTO CONSENT DECREE**
10   SWINERTON BUILDERS,

11                         Defendants.        Docket No. 15

12                I.      **FACTUAL & PROCEDURAL BACKGROUND**

13          The United States moves to enter this Consent Decree following Defendant Swinerton's

14   alleged violations of the Clean Water Act (CWA) and related state laws during the construction of

15   solar energy facilities in Alabama, Illinois, and Idaho.  Swinerton is a national construction

16   company that built four solar energy facilities: the American Falls Site near American Falls,

17   Idaho; the AL Solar Site near LaFayette, Alabama; the Prairie State Site in Perry County, Illinois;

18   and the Big River Site in White County, Illinois.  Docket No. 1 (Complaint) at ¶ 54.  The

19   Complaint alleges that Swinerton failed to obtain required permits for construction stormwater

20   discharges under the CWA, 33 U.S.C. § 1319(b), the Alabama Water Pollution Control Act, and

21   the Illinois Environmental Protection Act.  The Complaint alleges that Swinerton engaged in the

22   following actions:

23           (1) in Idaho, Swinerton failed to obtain an NPDES permit and discharged, without

24   authorization, sediment-laden stormwater from the American Falls Site, *id.* ¶ 120-121

25           (2) in Alabama, Swinerton discharged sediment-laden stormwater from unauthorized

26   discharge points and failed to comply with the terms of its state-issued permit at the AL Solar Site,

27   *id.* ¶¶ 130-132, 136; and

28           (3) in Illinois, Swinerton failed to comply with the conditions of state-issued permits at the

1  Prairie State Site and Big River Site, *id.* ¶¶ 141, 146.

2      The Complaint alleges that the unauthorized discharges of sediment from the Idaho and

3  Alabama sites caused harm to the impacted receiving waters that has not been redressed.  *Id.* ¶¶

4  122, 133.

5      This proposed Consent Decree is a result of negotiations between the parties.  It (1)

6  imposes on Swinerton injunctive relief to redress the environmental harms of its violations and (2)

7  charges civil penalties.  The Consent Decree was subject to a 30-day period for public comment

8  after Notice was published in the Federal Register on January 25, 2024.  *See* 28 C.F.R. § 50.7.

9  The comment period closed on February 26, 2024, and there were no public comments.  Docket

10  No. 15 at 3.

11      Now before the Court is Plaintiff's motion to enter into the consent decree.  Docket No. 15.

12  Swinerton does not oppose the motion.  The Court requested supplemental briefing on several

13  matters, to which both parties submitted briefing.  Docket No. 26 (United States Supp. Brief),

14  Docket No. 27 (Swinerton Supp. Brief).

15                    **II.      LEGAL STANDARD**

16      Courts may approve a proposed consent decree when it is "fundamentally fair, adequate

17  and reasonable" and "conform[s] to applicable laws."  *United States v. Oregon*, 913 F.2d 576, 580

18  (9th Cir. 1990).  Courts consider consent decrees in light of the public policy favoring settlement.

19  *Sierra Club v. McCarthy*, No. 13-cv-03953-SI, 2015 WL 889142, at *5 (N.D. Cal. Mar. 2, 2015)

20  (citing *United States v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275, 280 (1st

21  Cir. 2000)).  "This policy is strengthened when a government agency charged with protecting the

22  public interest 'has pulled the laboring oar in constructing the proposed settlement.'"  *United*

23  *States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 746 (9th Cir. 1995) (quoting *United States v.*

24  *Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990)).  But when a consent decree affects the

25  public interest, courts have a heightened responsibility to protect those interests so as to safeguard

26  those who did not participate in the negotiations of the decree.  *Oregon*, 913 F.2d at 581.  That

27  said, the consent decree need not "be 'in the public's best interest' if it is otherwise reasonable."

28  *Id.* (emphasis in original) (quoting *S.E.C. v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984)).  *See*

1    *generally United States v. Volkswagen AG (In re Volkswagen "Clean Diesel" Mktg., Sales*

2    *Practices & Prods. Liab. Litig.)*, No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 76089, at *813-15

3    (N.D. Cal. May 17, 2017); *see also United States v. PG&E*, 776 F. Supp. 2d 1007, 1024-25 (N.D.

4    Cal. 2011) (Illston, J.) (making many of the same observations).

5         In applying the "fair, adequate and reasonable" standard, courts examine both procedural

6    and substantive fairness.  *See United States v. Coeur D'Alenes Co.*, 767 F.3d 873, 877 (9th Cir.

7    2014); *Cannons Eng'g Corp.*, 899 F.2d at 86.  Procedural fairness requires arm's length settlement

8    negotiations, *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 207 (3d Cir. 2003), and a

9    "negotiation process [that] was fair and full of adversarial vigor," *United States v. Google Inc.*,

10   No. 12-cv-04177-SI, 2012 U.S. Dist. LEXIS 164401, 2012 WL 5833994, at *2 (N.D. Cal. Nov.

11   16, 2012) (internal quotation marks omitted).  "[O]nce the court is satisfied that the decree was the

12   product of good faith, arm's length negotiations, a negotiated decree is presumptively valid and

13   the objecting party has a heavy burden of demonstrating that the decree is unreasonable." *Oregon*,

14   913 F.2d at 581 (internal quotation marks and citation omitted).

15        Substantive fairness requires courts to "find that the agreement is based upon, and roughly

16   correlated with, some acceptable measure of comparative fault, apportioning liability among the

17   settling parties according to rational (if necessarily imprecise) estimates of how much harm each

18   potentially responsible party has done." *Arizona v. City of Tucson,* 761 F.3d 1005, 1012 (9th Cir.

19   2014).  Courts do not ask "whether the settlement is one which the court itself might have

20   fashioned, or considers as ideal[.]" *Cannons Eng'g Corp.*, 899 F.2d at 84.  "Rather, the court's

21   approval is nothing more than an amalgam of delicate balancing, gross approximations and rough

22   justice." *Oregon*, 913 F.2d at 581 (internal quotation marks omitted). The consent decree need

23   only "represent[] a reasonable factual and legal determination." *Id.* (internal quotation marks

24   omitted).

25   **III.     BASIC TERMS OF CONSENT DECREE WITH THE UNITED STATES**

26        The Consent Decree has two primary provisions: (1) a civil penalty and (2) injunctive

27   relief.  It then has secondary provisions regarding costs, notice, dispute resolution, and other

28   matters.  This section provides a high-level summary of the provisions.

United States District Court
Northern District of California

A.      Primary Provisions

    1.      Civil Penalty

Defendant shall pay a total civil penalty of $2.3 million, with interest accruing from August 23, 2023.  Docket No. 15 at 6.  $1,614,600 will go to the Department of Justice (DOJ).  *Id.* $540,500 will go to the Alabama Department of Environmental Management.  *Id.* at 7.  $144,900 will go to the Illinois Environmental Protection Agency.  *Id.* at 7.  Defendant shall comply with the processing and notice requirements.

Defendant shall pay civil penalties within 30 days after the effective date.  *Id.* at 6.

    2.      Injunctive Relief

        a.      Idaho Mitigation Action

Defendant will commit $600,000 to mitigation funds for maintaining sedimentation in the watershed of the American Falls site.  Docket No. 4-1 at 40.  These funds will be used for Phase One of the Oxbow Project or the Centennial Park Project, which are environmental restoration projects.  *Id.* Swinerton shall propose alternative projects for any leftover mitigation funds.  There are also reporting and notice requirements.

           i.      Supplemental Briefing

The Court requested further information on how the $600,000 was calculated.  Docket No. 20.  EPA experts quantified the harm of Swinerton's violations as resulting in 945 tons of excess sediment leaving the construction site and entering the American Falls Reservoir watershed.  Docket No. 26 at 6.  The $600,000 in mitigation funds will either partially fund a project that will either remove hundreds of tons of sediment per year, or fully fund a project to remove ten tons of sediment per year.  These projects would offset Swinerton's excess discharges within two to 33 years.  Docket No. 26 at 6.

        b.      Alabama Mitigation Action

Defendant shall purchase 14,020 stream credits from one of the US Army Corps of Engineers approved mitigation banks in Alabama.  8.  The EPA will review and approve or disapprove of the submissions according to procedural guidelines.  Defendant shall purchase mitigation funds and stream credits within 60 days after the effective date.  8.

United States District Court
Northern District of California

While the motion was pending, Swinerton proactively paid $1,184,690 to purchase 14,020 stream credits.  Docket No. 26 at 7.

### i.    Supplemental Briefing

The Court requested further information on how the 14,020 stream credits were calculated. Docket No. 20.  EPA experts applied the Army Corps' of Engineers' guidelines to estimate that 30,535 stream mitigation credits would be required to fully offset the environmental harm from the discharges in Alabama.  Docket No. 26 at 7.  Because Swinerton disputed their liability of the stream damage, parties settled on a middle ground of 14,020 stream credits.  Docket No. 26 at 7.

## B.    Secondary Provisions

### 1.    Reporting Requirements

Defendant must submit semi-annual reports to the EPA and the United States, detailing compliance with the decree's requirements.  These include status reports on the Idaho Mitigation Action and an update on expended mitigation funds.  11.

Defendant shall submit semi-annual reports for the first two years after entering the consent decree.  After two years, Defendant shall submit an annual report.  The report shall include descriptions of any non-compliance with the Consent Decree and any proposed remedial steps.  12.

### 2.    Stipulated Penalties

If the Defendant fails to comply with the decree, it is subject to the following stipulated penalties:

> $18,000 per day for every day of late payment of the above civil penalties.
>
> $15,000 per day for every day stream credits are not purchased pursuant to the Alabama Mitigation Action, and $5,000 per day for late submission of relevant documentation.
>
> $15,000 per day for every day mitigation funds are not committed pursuant to the Idaho Mitigation Action, and $15,000 per day for every violation of the remaining requirements pursuant to the Idaho Mitigation Action, $5,000 per day for each day the proposed alternative projects are late, $5,000 per day for every day the proposed alternative projects do not meet the criteria, $15,000 per day for every day Defendant fails to implement an EPA approved alternative Mitigation Action..

5

Defendant shall pay penalties for violating reporting requirements as follows:

> $2,000 per day for the first 14 days of noncompliance, $4,000 for the 15th through 30th day, and $6,000 for the 31st day and beyond. 14.

Finally, Defendant shall pay penalties for violating any other requirements of the Consent Decree as follows:

> $2,000 per day for the first 14 days of noncompliance, $4,000 for the 15th through 30th day, and $6,000 for the 31st day and beyond. 14-15.

Stipulated penalties are nonexclusive and the United States reserves the right to seek any relief it deems appropriate.

The penalties appear proportionate to Swinerton's size. *Cf. United States v. Walnutdale Family Farms, LLC,* 2021 U.S. Dist. LEXIS 88438 at *2-3 (W.D. Mich. 2021) (approving an EPA consent decree against a family farm in Michigan with a penalty per violation per day ranging from $250 to $5,000 per day).

### 3.    Force Majeure

The Consent Decree defines force majeure as events beyond the Defendant's control that prevent compliance. Defendant must claim force majeure and comply with notice and timing requirements.

### 4.    Dispute Resolution

Parties submit to informal dispute resolution and then, if unresolvable, to formal dispute resolution. There are procedure and notice requirements.

Defendant may also seek judicial review of the dispute resolutions pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or items requiring EPA approval, the adequacy of Defendant's performance, and all other disputes that are afforded review on the administrative record under applicable principles of administrative law. 20. Defendant has the burden of showing that the Plaintiff's position is arbitrary and capricious or otherwise not in accordance with law. Defendant bears the burden of demonstrating that its position complies with and furthers the objectives of the Consent Decree. 20-21. *See United States v. Walnutdale Family Farms, LLC,* 2021 U.S. Dist. LEXIS 88438 at *2-3 (W.D.

Mich. 2021) (entering an EPA consent decree against a dairy farm for violating provisions of the CWA and engaging in unlawful discharge and operation of waste storage devices); *United States v. Cisne Ny Constr., Inc.,* 2023 U.S. Dist. LEXIS 78489 at *32-33 (S.D.N.Y. 2023) (entering an EPA consent decree against a construction company for failure to comply with renovation regulations).

5.    Information Collection and Retention

Defendant must maintain and provide access to relevant records and information upon Plaintiffs request, including procedures for claiming confidentiality and privilege.  Parties submit to an additional five-year information retention period after the termination of the Consent Decree.

6.    Effect of settlement/Reservation of Rights

Plaintiffs reserve the right to enforce the decree and seek further relief for future violations.

7.    Costs

Parties bear their own costs of the action, except Plaintiffs can recover costs incurred for any additional actions related to Defendant's noncompliance with the Consent Decree.

8.    Notices

This section lists the main contact information for communications related to the Consent Decree.

9.    Effective Date

The effective date is the date the Court enters the Decree or grants the Motion to Enter the Consent Decree.

10.    Jurisdiction

The Court retains jurisdiction over the case until termination.

11.    Modification

Parties may modify the Consent Decree by (1) a written agreement signed by all parties and (2) Court approval.  Parties shall resolve any disputes concerning modification through dispute resolution.  Party seeking modification bears the burden of showing that it is entitled to modification pursuant to FRCP 60(b).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12.  <u>Termination</u>

Parties shall jointly stipulate termination of the Decree upon compliance with the Consent

Decree's primary provisions, i.e. civil penalties and injunctive relief.

13.  <u>Public Participation</u>

The Consent Decree shall be lodged with the Court for at least 30 days for public notice

and comment.  28 C.F.R. § 50.7.

14.  <u>Service, Integration, Identification, Headings, Final Judgment</u>

Finally, there are standard requirements for service, a statement that the Consent Decree is

completely integrated, the headings are not final interpretations of the Consent Decree, and the

Court's entry of the Consent Decree is a final judgment.

## IV.  <u>DISCUSSION</u>

Courts have looked at the following list of factors to decide whether a consent decree is

reasonable:

• The consent decree's likely "efficaciousness as a vehicle for cleansing the environment";

• "the extent to which [the consent decree] satisfactorily compensates the public for actual

and anticipated costs of remedial and response measures";

• "the relative strength of the parties' litigating positions";

• "the availability and likelihood of alternatives to the consent decree";

• "the extent to which approval [of the consent decree] serves the public interest."

*U.S. v. Fort James Operating Co.,* 313 F. Supp. 2d 902, 910 (E.D. Wis. 2004).  One court has

limited its review to the following three factors: "(1) the technical effectiveness of the plan for

environmental cleanup; (2) the amount of monetary compensation to the public; (3) the overall

fairness of the decree in light of the relative strengths of the parties and foreseeable risks of loss."

*U.S. v. National R.R. Passenger Corp.,* 1999 WL 199659 (E.D. Pa. 1999), *aff'd*, 235 F.3d 817 (3d

Cir. 2000).

However, irrespective of factors the reviewing court selects, the trial court gives deference

to the agency's expertise and the parties' agreement.  *US v. Cannons Engineering Corp.,* 899 F.2d

79, 84 (1st Cir. 1990) ("While the district court should not mechanistically rubberstamp the

1  agency's suggestions, neither should it approach the merits of the contemplated settlement *de*

2  *novo*").[1]

3      Here, the Consent Decree meets the majority of the factors from *Fort James* and *National*

4  *R.R. Passenger* and the Court finds all provisions, despite somewhat concern about the injunctive

5  relief as to the Idaho Mitigation Action, "fundamentally fair, adequate and reasonable" and

6  "conform[s] to applicable laws."  *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990).

7  A.  Effectiveness for Cleansing the Environment

8      First, the injunctive relief that requires Swinerton to pay substantial mitigation funds and

9  stream credits are effective to restore the environment because they fund environmental restoration

10  projects in the locations that Swinerton allegedly harmed.  The restoration project in Idaho will

11  increase sediment capture and therefore remove sediment and improve water quality in the

12  Portneuf River in Pocatello, Idaho.  Docket No. 26-1 at ¶ 14 (Dromgoole Decl.); Docket No. 27 at

13  7.  The stream credits in Alabama will improve water quality and aquatic habitat in the watershed

14  surrounding the Alabama Solar site.  Docket No. 26 at 7.

15  B.  Compensation for Remedial and Response Measures

16      Of specific concern is the injunctive relief of the $600,000 in mitigation funds for the

17  Idaho Mitigation Action.  This amount may fully fund a project that would remove ten tons of

18  sediment per year.  Docket No. 26 at 6.  However, because Swinerton's violations resulted in an

19  estimated 945 tons of excess sediment entering the American Falls Reservoir watershed, the

20  $600,000 in mitigation funds to that particular project could take nearly 100 years to remedy the

21  environmental damage.  This may not effectively compensate for the significant harms incurred at

22  the watershed.

23      The second provision of injunctive relief, the 14,020 stream credits for the Alabama

24  Mitigation Action, appears reasonable considering the EPA expert's calculation of harm equating

---

[1] As another frame of reference, in a CERCLA enforcement case, the Fifth Circuit explained that an appellate court will overturn a district court's decision to approve the consent decree in a case involving the United States "only for manifest abuse of discretion."  *City of Bangor v. Citizens Communications Co.,* 532 F.3d 70, 94 (5th Cir. 2008) (citing *Charles George Trucking,* 34 F.3d at 1085).

United States District Court
Northern District of California

to 30,535 stream credits and Swinerton's "vigorous" dispute as to its liability.  *See* Docket No. 26 at 7.

As for the civil penalty, the amount of $2,300,000 appears sufficient to compensate the public for remedial and response measures.  Most CWA construction stormwater settlements have imposed civil penalties ranging from $400,000 to $2,000,000, with the highest being over $5.1 million adjusted for inflation.  *See* Docket No. 27 at 5; *see e.g. United States v. Centex Homes,* No. 1:08-cv-00605 (2008) (civil penalty of $2,093,089 adjusted for inflation); *United States v. Wal-Mart Stores Inc.,* No. 1:04-cv-00301 (2004) (civil penalty of $5.1 million adjusted for inflation).

Also, at each of the four sites, EPA technical experts used a publicly available financial model to calculate the economic benefits to Swinerton as $421,522.  These benefits include, for example, the costs of stormwater controls Swinerton did not install or maintain, inspections it did not conduct, and reports it did not sufficiently complete.  $421,522 is only 18% of the total civil penalty of $2,300,000 in the Consent Decree.  The penalty also includes other statutory factors including the seriousness of the violations, and repeated violations even after regulator warnings. Docket No. 26 at 5.  The civil penalty amount of $2,300,000 appears reasonable in light of similar CWA construction stormwater settlements and the economic benefits to Swinerton for its CWA violations.

C.     Relative Strength of Litigating Positions

Third, the relative strength of the parties' litigating positions is not well-known because prior to this Motion, the case was only at the Complaint stage.  Swinerton did not move to dismiss the complaint, but does appear to generally dispute its liability.

D.     Alternatives to Consent Decree

Fourth, there are no clear alternatives to the consent decree that would remedy the Swinerton's environmental harms, because the injunction and civil penalties in the consent decree require the Swinerton to fund environmental restoration projects in areas that it caused damage. Parties did consider alternatives such as litigation, and requiring Swinerton to implement corporate compliance measures to prevent future violations at large scale solar construction sites.  Docket No. 26 at 9-10.  However, Swinerton sold its renewable energy division and ceased construction

1 of solar farms in December 2021, so the latter alternative became moot.  *Id.* at 10.

2 E.       Public Interest

3            Finally, approval of the consent decree serves the public interest because it requires

4 Swinerton to pay substantial penalties to the DOJ and state environmental agencies for its

5 significant environmental harms, and fund restoration projects in the specific areas that were

6 damaged.

7                                      **V.       CONCLUSION**

8            Despite the Court's concern about the adequacy of the Idaho Mitigation Action fund, in

9 light of the deferential standard to be applied by the Court to the overall proposed decree, the

10 Court GRANTS the motion to enter the Consent Decree.

11

12            **IT IS SO ORDERED**.

13

14 Dated: July 12, 2024

15

16 _____

17 EDWARD M. CHEN
   United States District Judge

18

19

20

21

22

23

24

25

26

27

28